UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELODGE HOTELS, INC., a Delaware Corporation,<br><br>                      Plaintiff,<br><br>v.<br><br>SEASIDE HOSPITALITY, LLC, a New Jersey Limited Liability Company; VILLAGE INN, LLC, a New Jersey Limited Liability Company; SANDIP PATEL, also known as SANDIPKUMAR PATEL, an individual,<br><br>                      Defendants. | Civ. No. 15-5595 (KM)<br><br>**OPINION & ORDER** |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of the plaintiff, Travelodge Hotels, Inc., Inc., for a default judgment against defendants Seaside Hospitality, LLC, and Sandip Patel, also known as Sandipkumar Patel. (Judgment is not sought against defendant Village Inn, LLC.) For the reasons set forth below, I will grant the motion and enter default judgment against the defendants in the amount of $ 76,257.61. That is $20,000 less than the amount requested, because I have declined to treble the trademark-related damages.

**BACKGROUND**

On March 30, 2012, Travelodge entered into a Franchise Agreement with Seaside for the operation of a 50-room lodging facility in Columbus, Ohio. ("FA", ECF no. 15-3 at 15) The Agreement had a term of fifteen years, and it granted Seaside the right to use the Travelodge® marks. Section 3 of the agreement obligated Seaside to make renovations to bring the facility into

1

compliance with Travelodge's system standards. Section 3.2 obligated Seaside to operate the facility in compliance with the law and Travelodge's system standards. Sections 3.7 and 4.8 entitled Travelodge to conduct quality assurance inspections. Section 3.11 obligated Seaside to use reasonable efforts to protect the value of the Travelodge® name. Under Section 7, Section 18.1, and Scheduled C, Seaside was required to make certain periodic payments ("Recurring Fees") of royalties, system assessments, taxes, and other charges. Section 7.3 imposed interest at the lesser of 1.5% or the maximum allowed by law, on past due amounts. Section 3.6 required accurate recordkeeping and monthly reports to Travelodge of, *inter alia,* gross room revenue to permit the calculation of the Recurring Fees. Section 11.2 permitted Travelodge to terminate the agreement, on notice, if Seaside defaulted and failed to remedy such default within 30 days of notice; acted so as to injure the goodwill associated with the Travelodge® mark; or maintained the facility in a manner that endangered the health or safety of the guests. Sections 12.1 and 18.2 provides that, in the event of termination, Seaside would pay liquidated damages under a set formula of $750 multiplied by the number of guest rooms. Under Section 13, upon termination Seaside was required to cease using all Travelodge® marks. Among other things, Seaside was required to remove all Travelodge signage from the facility. Section 17.4 provided that the non-prevailing party would pay costs and expenses, including attorney's fees, incurred in enforcing or collecting amounts due under the Franchise Agreement. Sandip Patel signed a Guaranty of Seaside's obligations under the Franchise Agreement. ("Guaranty", ECF no. 15-3 at 61)

By notice of default dated September 4, 2014, Travelodge advised Seaside that a quality assurance inspection of the facility had uncovered safety issues, including broken locks, poor lighting, and buckled carpet by the pool.

On September 4, 2014, a criminal action entitled *United States v. Sandipkumar Patel,* Crim. No. 14-508, was instituted against Sandip Patel in the U.S. District Court for the District of New Jersey. Mr. Patel pleaded guilty to a criminal Information charging him with conspiracy to defraud the United

2

States in connection with H-1B visas, in violation of 18 U.S.C. § 371, and subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1). A review of the docket for the criminal case cited by Travelodge reveals that Sandipkumar Patel was sentenced to 30 months' imprisonment, restitution in the amount of $423,452, and a fine of $50,000. A news article published on December 29, 2014, related that Patel had continued to operate his Seaside Heights hotels, including the subject facility, while awaiting sentencing, and also stated that the facility had been cited for health and safety hazards, including broken smoke detectors, missing carbon monoxide alarms, and electrical problems.

By letter dated February 3, 2015, Travelodge terminated the Franchise Agreement effective April 6, 2015. Seaside did not remove the Travelodge signage which identified the facility as a Travelodge facility, and did not correct third party websites such as tripadvisor.com, which continued to identify it as being affiliated with Travelodge. Travelodge sent cease and desist letters, but Seaside did not remove the signs until approximately July 30, 2015.

Travelodge has submitted an itemized statement calculating the outstanding total of Recurring Fees, plus interest at the rate of 1.5% per month. The total is $21,805.37. The liquidated damages consist of $750 multiplied by 50 guest rooms, for a total of $37,500, representing lost Recurring Fees as a result of the termination. The post-termination interest on the liquidated damages at 1.5% per month is calculated at $6952.24.

Finally, Travelodge seeks $30,000 ($10,000, trebled) for willful infringement of the Travelodge® marks.

## DISCUSSION

Before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63). "[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL

3

3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

## I.   Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service may be made by personal service, leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion, delivering a copy of the summons and complaint with an agent for service of process, or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. *See* Fed. R. Civ. P. 4(e), Fed. R. Civ. P. 4(h)(1), N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may nevertheless be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C), by

> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is

4

authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Travelodge has submitted a Certification of Service, with relevant exhibits attached. (ECF no. 15-2) Despite diligent efforts to serve by the preferred methods, the defendants could not be located. On July 30, 2015, Travelodge served the defendants by certified and regular mail.

Defendants had twenty-one days to file an answer or otherwise respond to the complaint pursuant to Fed. R. Civ. P. 12(a). No response was forthcoming. On December 10, 2015, the clerk entered default. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

## II. Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### a. Factor 1

My independent review of the record does not suggest that the claims asserted by Travelodge that any defendant has a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Travelodge has successfully stated claims for relief.

The complaint (ECF no. 1) alleges the facts as set forth above, and attaches copies of the Franchise Agreement and Guaranty. It asserts causes of

action, which, in essence, amount to a claim for breach of contract against Seaside, and dependent claims of breach of the Guaranty against Sandip Patel.

Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

The facts alleged in the Complaint, summarized very briefly above, establish that those elements are satisfied here. The declaration submitted in support of Travelodge's motion and the exhibits annexed thereto corroborate those factual allegations. Both the Franchise Agreement and Guaranty are on their face valid and enforceable contracts. Those contracts were breached by, *inter alia*, Seaside's failure to maintain standards, its owner's indictment on criminal charges, and publicity detrimental to the Travelodge® mark. In sum, the facts alleged by Travelodge state a claim for breach of the Franchise Agreement and Guaranty.

The essential elements of a claim of trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, are "that (1) [plaintiff] has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). (Section 43, 15 U.S.C. § 1125, creates a distinct cause of action for false designation of the origin of goods or services.)

Travelodge's papers establish that it owns the registered mark, and indeed the mark is a well-known one. The third element, too, is easily established under black-letter principles:

> "The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public. It has been described as 'a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.'" *Villanova Univ. v. Villanova Alumni Educ. Found.*, 123 F.Supp.2d 293, 309 (E.D. Pa. 2000) (quoting J. Thomas McCarthy, McCarthy on Trademarks and

6

>Unfair Competition § 25:31 ("McCarthy")). "It is axiomatic that use of a licensed mark by an ex-licensee after termination of the license creates a likelihood of confusion, infringing and unfairly competing with the rights of the trademark owner." *Ford Motor Co. v. A.C. Car Group Ltd.*, 2002 WL 1072258, *——, 2002 U.S. Dist. LEXIS 7188 *6 (E.D.Mi. March 4, 2002). "[M]any courts [including the Third Circuit] have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." *Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983). *See, e.g., U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir.1997) ("proof of continued, unauthorized use of an original trademark by one whose license to use the mark has been terminated is sufficient to establish 'likelihood of confusion' "); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3d Cir.1981) ("We perceive that there is great likelihood of confusion when an infringer uses the exact trademark [of its former licensor].").

*ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004).

No meritorious defense to these claims is apparent from the record before me.

### b. Factors 2 and 3

The second and third factors weigh in favor of default. Defendants were properly served but have failed to appear and defend themselves in any manner. It is clear that Travelodge has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the

Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment, and I will grant the motion for default judgment against the defendants.

### III. Remedies

Travelodge seeks outstanding Recurring Fees, liquidated damages, trademark infringement damages, and interest. Travelodge has submitted documentary evidence in support of its demands, while defendants have submitted nothing and have failed to appear or respond in any manner. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will grant Travelodge's request for the principal amount of recurring fees due and interest on those fees. Travelodge has documented the recurring fees, and interest calculated at 1.5% monthly, in an amount of $21,805.37.

I will also grant Travelodge's request for liquidated damages the amount of $37,500.

> Damages for breach of either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

*Restatement (Second) of Contracts* § 356(1) (1981). The Court may examine the reasonableness of a liquidated damages clause "either at the time of contract formation or at the time of the breach." *Naporano Assocs., L.P. v. B & P Builders*, 706 A.2d 1123, 1128 (N.J. Super. Ct. App. Div. 1998) (quoting *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 107 (N.J. 1994)). Whether an unambiguous liquidated damages clause is valid and enforceable is a question of law for the court. *Naporano*, 706 A.2d at 1127 (citing

8

*Wasserman's*, 645 A.2d at 110). *See also Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.*, No. CIV. 03-799 (WHW), 2005 WL 2656676, at *10 (D.N.J. Oct. 18, 2005).

Liquidated damages, provided for under the terms of the Franchise Agreement, are meant to replace the income that Travelodge would have received if not for the premature termination of the License Agreement. I accept that such damages cannot be known with precision, and must be estimated. The parties agreed to a formula for liquidated damages as of the time of termination. The liquidated damages represent lost Recurring Fees as a result of the termination. Travelodge entered into the agreement for a fifteen year term, but it was terminated after less than two years. The liquidated damages figure, the parties agreed, represented a reasonable estimate of future losses that are hard to quantify. Having nothing else before me, I accept that the liquidated damages figure claimed is not excessive or disproportionate.

The post-termination interest on the liquidated damages at 1.5% per month is calculated at $6952.24. That amount reflects the rate provided for in the parties' agreement.

Finally, Travelodge seeks $10,000 in damages for infringement of its marks, and seeks to treble that amount to $30,000, claiming that the infringement was "deliberate and willful."

The Lanham Act permits recovery of "any damages sustained by the plaintiff," to be "assessed by the Court or under the Court's discretion." 15 U.S.C. § 1117(a). Travelodge's $10,000 calculation, absent any contrary evidence, is reasonable. It is based on what amounts to Seaside's continuing to use the Travelodge marks, after Travelodge had cancelled the agreement, without continuing to pay for the privilege. Travelodge advised Seaside by letter that it was required to de-identify the facility within 10 days after the termination date of April 6, 2015. Thus the infringement lasted from approximately April 16, 2015, to approximately July 30, 2015. Under Section 18.1.2 of the Franchise Agreement, Travelodge would have been owed monthly flat fees totaling $10,000 for that period. (ECF no. 15-3 at 11) That is a

reasonable measure of what Travelodge's lost as a result of Seaside's continued use of the trademarks.

That brings us to trebling. Damages, or at least certain damages, may be trebled:

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, ... together with a reasonable attorney's fee, in the case of any violation of section 32(1)(a) of this Act, ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, ... in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).

> Treble damages are only to be imposed, however, if the defendant's infringement was intentional, knowing, or willfully blind. See *Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1339-41 (D.N.J.1994) (citing *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588-90 (7th Cir.1989) (Posner, J.)).

*Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC*, No. CIVA 06-CV-1581 PGS, 2007 WL 1674485, at *8 (D.N.J. June 8, 2007).[1]

I will exercise my discretion here to deny treble damages. Here, the infringer did not literally counterfeit Travelodge's mark, in the sense of forging it. Rather, the infringer passively delayed in discharging its contractual duty to remove the mark from the building once the Agreement was cancelled on Travelodge's initiative.[2] From this record it is impossible to tell whether that

---

[1] One court has expressed doubt as to the scope of the treble damages provision in this situation:

> A split in authority has developed in federal jurisprudence over whether an ex-licensee's continued use of a trademark constitutes counterfeiting for purposes of awarding treble damages and attorney's fees under 15 U.S.C. § 1117(b). Compare *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1187, (6th Cir.1997), with *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 772 (9th Cir.2005).

*G6 Hosp. Franchising LLC v. Hi Hotel Grp., LLC*, No. 1:11-CV-02176, 2016 WL 1109216, at *3 (M.D. Pa. Mar. 22, 2016). I do not reach that issue; my ruling is a discretionary one.

[2] Travelodge notes that it sent a letter informing Patel of his post-termination obligations to remove the signs. It presumes that Patel received and heeded its

tardiness was purposeful. The record is just as consistent with financial hardship, or the distractions of the criminal case. (Patel was sentenced on June 2, 2015; it seems that removal of the signs was one of the last things he did before his scheduled surrender for service of sentence on August 3, 2015, later postponed to August 24, 2015. See Crim. No. 14-508, Dkt entries 10, 14.)

I will give defendant the benefit of the doubt and withhold trebling. The copyright infringement damages are fixed at $10,000, not $30,000.

### ORDER

For the foregoing reasons,

IT IS this 6th day of October, 2016

ORDERED that the motion for default judgment (ECF no. 15) is GRANTED. A separate default judgment will be entered against defendants, jointly and severally, in the total amount of $76,257.61. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

_____
KEVIN MCNULTY, U.S.D.J.

---

notifications; on the other hand, however, Travelodge claims that it was unable to locate Patel for purposes of service, and relies on substituted service as the basis for this default judgment.